IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA A. SKANES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10cv320-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under

Title XVI of the Social Security Act,  42 U.S.C. §§ 1381 et seq., alleging that she was

unable to work because of a disability.   Her application was denied at the initial

administrative level.   The plaintiff then requested and received a hearing before an

Administrative Law Judge ("ALJ").   Following the hearing, the ALJ concluded that the

plaintiff was not under a "disability" as defined in the Social Security Act.   The ALJ,

therefore, denied the plaintiff's claim for benefits.   The Appeals Council rejected a

subsequent request for review.   The ALJ's decision consequently became the final decision

of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

129, 131 (11ᵗʰ Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C.

§§ 405 (g) and 1383(c)(3).

The parties have consented to the United States Magistrate Judge conducting all

proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. §

636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and

the briefs of the parties, the court concludes that the decision of the Commissioner should

be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific
        impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)    Is the person unable to perform his or her former occupation?
(5)    Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction**.  Plaintiff Patricia Skanes ("Skanes") was 49 years old at the time

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

of the hearing before the ALJ.  (R. 27).  She has a high school education.  (*Id*.).  Her past relevant work experience includes work as a receiving clerk. (R. 19).  Following the hearing, the ALJ concluded that the plaintiff has severe impairments of major depressive disorder and generalized affective disorder.  (R. 15).  The ALJ concluded that the plaintiff did not meet or equal any of the Listings, and concluded that Skanes has the residual functional capacity to perform work at all exertional levels.  (R. 16-17).  Thus, the ALJ concluded that Skanes could perform her past relevant work, and that she was not disabled. (R. 19).

**B. The Plaintiff's Claims**.  As stated by the plaintiff, the two issues for the Court's review are as follows.

1.   The Commissioner's decision should be reversed because the ALJ committed reversible error in failing to accord adequate weight to the opinion of Ms. Skanes' treating psychiatrist, Dr. Serravezza.

2.   The Commissioner's decision should be reversed because the ALJ committed reversible error in relying on the conclusions of a consulting psychologist who only examined Ms. Skanes once.

(Doc. # 11, Pl's Br. at 5).

## IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720

F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must also conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The Commissioner's regulations require that a written decision contain several elements. The ALJ must state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphasis added).

**A. Rejection of Treating Physician's opinion**. Skanes argues that the ALJ improperly rejected her treating psychiatrist's opinion about the severity of her limitations. In essence, the plaintiff argues that if the ALJ accepted Dr. Serravezza's assessment about her mental impairments, she would be disabled. On October 30, 2007, Dr. Serravezza completed a psychiatric evaluation form describing Skanes' mental limitations. (R. 200-200). According to Dr. Serravezza, Skanes had marked or extreme limitations in fifteen areas dealing with her ability to function in a work environment. (*Id*.) She had moderate restrictions in three areas. (*Id*.) According to Dr. Serravezza, Skanes' mental impairments would be expected to last more than 12 months. (R. 201). Dr. Serravezza's also commented that "[s]ide effects of meds include sedation, slowed thinking." (R. 202).

5

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).

6

The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the opinion of Dr. Serravezza because her treatment records do not support her assessment that Skanes suffers from marked mental limitations. (R. 18)

> While it is credible that the claimant experiences some limitations due to a mental impairment, it is not credible to the extent that she has alleged. First, the medical evidence reflects the claimant has no physical or mental limitations that interfere with activities of daily living, or have resulted in decompensation; and has only moderate limitations with respect to social functioning and concentration. The undersigned has considered records from South Central Alabama Mental Health that document treatment only from May through October 2007 [Exhibits 3F; 4F]. An assessment from a treating psychiatrist notes multiple marked deficits however; (sic) the evidence of record does not support this conclusion at all. In addition, the assessment notes significant medicines and increased dosages during 2007 treating period that is also not supported by the medical evidence of record. Therefore, no weight is given to the treating psychiatrist's assessment. Claimant testified to an earlier period of mental health treatment [1990's], however subsequent records show that family practitioners provided medicines until May 2007. Again, there is no evidence of any medical treatment prior to May 2007.

(R. 18)

The ALJ's determination is supported by substantial evidence. In her initial disability

report, Skanes indicated that she stopped working on April 24, 2006 due to disabling depression. (R. 114). She also indicated that she had not seen a doctor about her mental impairment, nor was she on any medication to treat her condition. (R. 116-17). Skanes completed a daily activities questionnaire indicating that she takes no medication to help her sleep; she is able to care for her personal needs; and she cooks, cleans and shops for herself. (R. 132-33).

During an consultative psychological evaluation on August 8, 2006, Skanes reported that she was depressed, nervous and had stress. (R. 158). Dr. Robert DeFrancisco, PhD., noted that Skanes was friendly and cooperative, and her speech was intelligible and coherent. (R. 159). He noted that Skanes was not currently receiving treatment and was not on any medication. (R. 161). Dr. DeFrancisco opined that Skanes "has the ability to understand, carry out, and remember instructions. She may be suffering from some emotional concerns, but they do not seem severe enough to preclude her from working. Restriction of activity and constriction of interest would be mild to mildly moderate." (*Id*.).

In a subsequent disability report, Skanes indicated that she had seen Dr. Wayne Johnson on November 7, 2006.[4] (R. 139). On May 16, 2007, Skanes presented to the South Central Alabama Mental Health Clinic for treatment of depression. (R. 178-81). She was seen by W.D. Underwood[5] on July 12, 2007. (R. 183-90). Although Skanes endorsed numerous psychological symptoms, Underwood noted that she was appropriately dressed,

---

[4] Dr. Johnson appears to be Skanes' family doctor and a general practioneer.

[5] The record indicates that W.D. Underwood is a therapist/case manager at the clinic. (R. 192).

calm, with appropriate speech patterns.  (R. 185).  Her affect was constricted and she was

easily distracted.  (*Id.*)  She complained of "paranoia, tactile hallucinations, impaired

concentration/memory, sleep problems, sad moods, poor daily coping, ... and poor esteem."

(R. 189).  She reported being unable to manage stress.  (*Id.*)  Skanes was diagnosed as

suffering from major depressive disorder, recurrent, and scheduled to see a therapist on

August 7, 2007.  (R. 189-90).  Dr. Serravezza *approved* Skanes' treatment plan on *July 24,*

*2007*, twelve days after Skanes was seen at the clinic.  (R. 190).

On August 7, 2007, Dr. Serravezza conducted an initial evaluation of Skanes.  (R.

195).  Skanes appeared depressed and tearful.  She had fair memory, attention span, and

impulse control.  (*Id.*)  She denied hallucinations but had some paranoia.  (*Id.*)  Dr.

Serravezza's interview note, in its entirety, is as follows.

> Long hx depression.  Poorly responsive to SSRI antidepressants.  Currently
> severely depressed, anxious & hopeless - was working in Mont. at Big Lots -
> felt ridiculed & persecuted by mgt & co-workers.  Family hx - brother has
> depression - uncles & aunts alcoholics - med. hx - no current illness - Dx -
> MDD with psy date 84 r/o Bipolar deferred

(R. 195).

Dr. Serravezza prescribed Lexapro[6] and Invega.[7]  (R. 32-33, 147, 195-96). Dr.

Serravezza next saw Skanes on October 30, 2007.  According to the treatment note, Skanes

---

[6] Lexapro is used to treat major depressive disorders.  PHYSICIANS' DESK REFERENCE, 1130 (65th ed. 2011).

[7] Invega is used "as an adjunct to mood stabilizers and/or antidepressants" in the "acute treatment of schizoaffective disorders."  PHYSICIANS' DESK REFERENCE, 2691 (65th ed. 2011).  There is no indication that Skanes has ever been diagnosed as suffering from schizoaffective disorders or schizophrenia.

was very anxious and needy as well as agitated and 'help seeking.' (R. 196).  She also

reported needing new prescriptions. (*Id*.) Dr. Serravezza made the following note during her

interview with Skanes.

> Not coping - nothing going right - Can't work.  Lost job - Very evasive re
> reasons.  Had to fuss & fight with people every day . . . was harassed to degree
> to being depressed not able to cope being around people.  This happens with
> all my jobs.

(R 196).

Dr. Serravezza increased the dosage of Skanes' prescription for Invega but did not

alter the dosage of Lexapro.  At this appointment, Dr. Serravezza also completed a form

rating Skanes' mental impairments.  She indicated that Skanes had marked or extreme

limitations in all areas except her ability to answer simple questions, and her ability to

understand and carry out simple instructions. (R. 200-01).  Dr. Serravezza's medical records

do not support her opinion that Skanes suffered from mental impairments of the severity

asserted.  Dr. Serravezza saw Skanes twice, in August and October 2007.[8]  It is clear that her

interview notes reflect Skanes' complaints as told to her by Skanes.[9]   At the administrative

hearing, Skanes testified that she saw Dr. Serravezza "every four to six months," (R. 39), and

---

[8]  Although Skanes submitted a "Recent Treatment" form to the Commissioner on April 15, 2008, indicating that she had been seen by Dr. Serravezza and Dr. Johnson in November 2007, and by W.D. Underwood on March 14, 2008 and April 16, 2008, there are no medical records indicating treatment on those dates. (R. 146).  Additionally, on May 27, 2008, Skanes submitted a handwritten medication list that indicated she was prescribed Cogentin and Trazadone on May 13, 2008. (R. 150).  However, there is no medical record demonstrating treatment or new prescriptions issued on that date.

[9]  The plaintiff asserts that she "continuously" complained of insomnia and chronic sad moods. (Pl's Br. at 9).  Skanes was seen only twice and neither treatment record indicates she complained of insomnia. The plaintiff's distortion of the evidence is disingenuous, and not helpful to busy trial courts.

the records do not indicate that Dr. Serravezza recommended more frequent therapy for Skanes.[10]

Additionally, the only comment by Dr. Serravezza on the evaluation form refers to side effects caused by Skanes' medication. (R. 202). However, at the administrative hearing, Skanes testified that she suffers no side effects from the medication. (R. 33). The ALJ may disregard the opinion of a physician or psychologist, provided that he state with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ examined and evaluated the medical records for evidence supporting Dr. Serravezza's assessment of the severity of Skanes' mental impairments. The record contains no evidence, other than the plaintiff's own self-reports, to support Dr. Serravezza's assessment. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Serravezza's opinion that Skanes suffers from disabling mental impairments.

**B. Reliance on Consultative Psychologist's opinion**. The plaintiff also argues that the ALJ erred in relying on the opinion of the consultative psychologist, Dr. DeFrancisco, because he only saw the plaintiff once. Although Dr. DeFrancisco only saw Skanes once, his opinion was supported by Skanes's own testimony about her daily activities and by her lack of treatment. *Fries v. Commissioner of Soc. Sec.*, 196 Fed. Appx. 827, 833 (11th Cir. 2006). In this case, the medical evidence or lack of it is obvious from the record. "Because

---

[10] According to documents from the South Central Mental Health Clinic, appointments with patients are scheduled based on risk level. If a patient is a low risk, the patient is seen within 60 days. If the patient is a very low risk, an appointment could be scheduled within three months. (R. 189).

the ALJ articulated good cause for discounting the treating physician's opinion, the ALJ did

not err in giving more weight to the consulting, examining physician's opinion."  Kelly v.

Commissioner of Social Sec., 401 F.ed Appx. 403, 408 (11th Cir. 2010).

To the extent that the plaintiff is arguing that the ALJ should have accepted Dr.

Serravezza's opinion over Dr. DeFrancisco's, as the court explained, the ALJ had good cause

to discount Dr. Serravezza's opinion, and the record supports Dr. DeFrancisco's opinion.

This court must accept the factual findings of the Commissioner if they are supported by

substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d

622 (11th Cir. 1987).

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that

substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the

court concludes that the decision of the Commissioner is supported by substantial evidence

and is due to be affirmed.

A separate order will be entered.

Done this 27th day of July 2011.


            /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE